**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4301
_____

UNITED STATES OF AMERICA

v.

ROBERT SMITH,
a/k/a "B", a/k/a "Born"

Robert Smith,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. Action No. 1-14-cr-00152-001)
District Judge: Honorable Noel L. Hillman
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 23, 2017
_____

Before: GREENAWAY, JR., NYGAARD, AND FISHER, *Circuit Judges*.

(Opinion Filed: January 31, 2018)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Robert Smith appeals from the conviction and sentence entered by the United States District Court for the District of New Jersey. Smith raises six claims on appeal.[1] First, he argues that the District Court erred in denying his motion for discovery on a selective enforcement claim. Second, Smith claims that the District Court erred in declining to find the Government conduct at issue outrageous. Third, he contends that the jurisdictional requirements of the Hobbs Act, 18 U.S.C. § 1951 (2012), were not satisfied. Fourth, Smith asserts that the Government's summation misstated the applicable legal standard and denigrated the defense and defense counsel. Fifth, he challenges the trial court's inclusion of an instruction to the jury that withdrawal is not a defense to a Hobbs Act conspiracy. Sixth, Smith argues that the sentence imposed was substantively unreasonable. We will

---

[1] Smith lists seven issues in his opening brief. We consider the sixth issue that he identifies—asking whether the Government's "argument to the jury denigrating the defense and defense counsel, by itself or in conjunction with the erroneous giving of the withdrawal instruction, work[ed] to deprive the defense of its defense, and thereby deprive[d] Mr. Smith of a fair trial"—together with the summation and jury instruction claims. Appellant Br. 3.

Smith raises three additional arguments in his Supplemental Reply Brief: (1) the Indictment should have been dismissed because it did not comply with Federal Rules of Criminal Procedure 7 and 12; (2) "a fictionalized and illegal contraband article" should not be considered property for the purposes of the Hobbs Act, Suppl. Reply Br. 6; and (3) the District Court erred in failing to make a finding as to the drug quantity fairly attributable to Smith. Because these arguments were not raised in his opening brief, they are waived. *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes 'a passing reference to an issue . . . will not suffice to bring that issue before this court.'" (quoting *Simmons v. City of Phila.*, 947 F.2d 1042, 1066 (3d Cir. 1991))).

remand in part on the issue of selective enforcement and hold the remainder of the appeal C.A.V.

## I. Background

In 2013, agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") began investigating Derrick Adams after corroborating information that he had been involved in armed robberies and home invasion robberies of drug dealers in southern New Jersey. In its investigation, the ATF utilized an undercover agent, Greg Sheridan, to facilitate a sting operation entailing a proposed home invasion. Sheridan represented himself as a courier for a Mexican drug cartel who would pick up and transport between one to five kilograms of cocaine from somewhere in the area to a designated stash house. He noted that there would be no less than fifteen kilograms inside the stash house and he was looking for a crew that was "willing to go in there . . . and take everything," JA 603, as opposed to simply stealing the one to five kilograms that he would be transporting, as Adams had suggested. Sheridan also emphasized to Adams that the cartel brings in the cocaine from Mexico through Texas and into New Jersey.

Upon being presented with the home invasion opportunity, Adams recruited other individuals, including Smith, to participate and formed a plan to execute the robbery that involved impersonating Drug Enforcement Administration ("DEA") agents. On January 30, 2014, Sheridan, Adams, and the robbery crew met in the parking lot of a restaurant in Moorestown, New Jersey to discuss the home invasion, which was supposed to be conducted that day. Adams and the other crew members arrived in two cars. Smith and

Sheridan discussed the logistics of the home invasion, during which Sheridan emphasized that the cartel was dangerous but that he would go along with whatever plan the robbery crew decided upon; he added that the "cocaine was of good quality . . . and it was transported into the United States via Mexico." JA 628-30.

Smith's statements during the conversation indicated that he was willing to kill the stash house guards if necessary, that they planned to distribute the stolen cocaine, that Adams had been relaying to him what Sheridan had said in previous discussions, and that he had taken a leadership role in the robbery crew. Sheridan detected no hesitation on the part of Smith in continuing with the proposed robbery. Sheridan also spoke with the other robbery crew members, although Smith interrupted, saying "I put you on 50," which was interpreted to mean that he would relay the information. JA 635, 675-76.

Sheridan then led both cars to a storage locker location to show them where he wanted the robbery proceeds placed. Adams exited his car and met with Sheridan in the storage facility. Sheridan explained to Adams that he wanted the proceeds of his cocaine left in the storage locker, gave him the key and code for the locker, told him the crew could meet at that location before they conduct the home invasion, and offered a rental vehicle rented in a fictitious name that they could use.

Sheridan provided the arrest signal to the other law enforcement agents on the scene after the meeting. Agents recovered a total of five firearms from the two cars, among other items.

The members of the robbery crew were initially charged with conspiracy to commit

robbery, in violation of 18 U.S.C. § 1951(a), and conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846.

In his pretrial motions, Smith sought, *inter alia*, discovery relating to selective enforcement, dismissal for outrageous government conduct, and dismissal on the basis of manufactured jurisdiction.  He argued that law enforcement appeared to be focused on members of minority communities, even though there were White candidates in the same area that were not targeted.  Moreover, he believed that an undercover agent's provision of drugs to Adams and encouragement of escalation to a home invasion robbery constituted outrageous conduct.  The District Court denied the motions, explaining that Smith had not satisfied the requirements for discovery under *United States v. Armstrong*, 517 U.S. 456 (1996); the government conduct did not rise to the level of "shocking, outrageous, and clearly intolerable," JA 195; *see United States v. Nolan-Cooper*, 155 F.3d 221, 231 (3d Cir. 1998); and the jurisdictional foundation was justifiable.

Smith ultimately proceeded to trial on a Third Superseding Indictment, which charged him with conspiracy to commit robbery, in violation of 18 U.S.C. § 1951(a); conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; using, carrying, and possessing firearms in connection with a crime of violence or a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and possession of firearms and ammunition by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1).

During trial, the Government presented cell phone records and recordings and

5

presented as witnesses ATF agents, a member of the robbery crew, and expert witnesses. Relevant here, Sheridan testified that he used the fifteen kilogram number based on a consultation of what would be contained in a realistic stash house in the area and he upped the stakes to raise the level of violence and "weed out the opportunists." JA 603-04. DEA Special Agent David McNamara testified for the Government that cocaine originates in South America and is then transported to places including the United States. He added that cocaine that is found in New Jersey, in particular, typically arrives after crossing state lines, although it may also arrive directly to New Jersey from South America through the mail or a port in the state. On the defense case, in addition to recalling a testifying agent, Smith called a witness to speak to Adams's abuse of prescription drugs and a private investigator to testify as an expert.

In summation, defense counsel argued that the evidence did not show that Smith committed himself to the home invasion plan, but rather that he had been skeptical about the proposition and the possibility that it was a sting. In response to the defense's closing statement, the Government requested the inclusion of a jury instruction clarifying that there is no withdrawal defense to the conspiracy charges, which the District Court subsequently added over defense counsel's objection. In its rebuttal summation, the Government also analogized the case to three friends going to a restaurant, explaining that a decision to go to a restaurant, even if they do not know which one, is still an agreement, as is a decision to go to a restaurant where one of the friends does not know the details of the menu but the other two already know what they will order; an agreement does not require that they "have

all the details worked out"—reaching an understanding of "what the goal is" and "where they're going to go" is sufficient.[2] JA 792. The Government concluded its summation by making an entreaty for the jury to reject defense counsel's argument, specifically noting that, "as [defense counsel] pulls up his vehicle and opens the door and invites each and every one of you to step inside," the jury should reject the invitation to enter the defense counsel's car. JA 792-93.

After the jury left the courtroom, defense counsel objected to the Government's characterization of an agreement under the law, which the Court did not find to be inappropriate. The following day, defense counsel also lodged an objection to the imagery used by the Government at the end of its rebuttal, arguing that it denigrated defense counsel in light of the parallel between that and the earlier argument that none of the jurors would have stayed in a car with Sheridan had he told them the details of his proposal. Again, the District Court disagreed, concluding that it had not found anything the Government said "to be particularly disturbing, either individually or in a cumulative way." JA 801.

On April 21, 2016, the federal jury convicted Smith of all four counts. At Smith's sentencing hearing, the District Court denied Smith's motions under Rules 29 and 33 of the Federal Rules of Criminal Procedure. With respect to the calculation of the sentence,

---

[2]    The Government additionally included an example where "they've decided on the restaurant, but two of the three friends do not know of the restaurant, one does not. That's an agreement between two of those three friends." JA 792. In the context of the prosecutor's other examples in the analogy, this appears to be an inadvertent misstatement, the intention likely being to say that two of the three friends know of the restaurant and one does not. This slip does not change our analysis.

the District Court adopted the recommendations in the Presentence Report, including the application of a sentencing enhancement for being an organizer, leader, manager, or supervisor and the denial of a reduction for acceptance of responsibility. It determined Smith's total offense level to be 37 and criminal history category to be VI. The District Court also found that Smith was a career offender under U.S. Sentencing Guidelines § 4B1.1(b). The advisory guidelines range was therefore 420 months to life. The District Court granted a downward variance and imposed a sentence of 360 months in prison to be followed by five years of supervised release.

## II. Jurisdiction

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## III. Analysis

Smith first claims that the District Court should have granted him discovery "into the ATF's selection criteria and program for stash house sting cases." Appellant Br. 20. He questions whether *Armstrong* should apply to discovery requests regarding selective enforcement, but argues that he had met the "demanding" *Armstrong* standard nonetheless. *United States v. Washington*, 869 F.3d 193, 215 (3d Cir. 2017); *see id.* at 214-16 (explaining that under the *Armstrong*/*Bass* standard, "criminal defendants seeking *discovery* on an anticipated selective prosecution claim" can rest their discovery motion on "some evidence" of discriminatory effect and discriminatory intent, which must include a credible "showing that similarly situated persons were not prosecuted" and "cannot

generally be satisfied with nationwide statistics"). "While discovery rulings are ordinarily reviewed for abuse of discretion, 'we exercise *de novo* review over the standards the district court used in exercising its discretion.'" *Id.* at 213 (quoting *Redland Soccer Club v. Dep't of the Army*, 55 F.3d 827, 845 (3d Cir. 1995)).

Following the filing of Smith's appeal in this case, this Court issued an opinion in *Washington*, in which we held that "motions for discovery seeking information on putative claims of unconstitutional selective enforcement are not governed by strict application of the *Armstrong/Bass* framework."[3] *Id.* at 220; *see id.* at 219-20 (explaining the reasons for the distinction in treatment between selective enforcement and selective prosecution). Rather, "[i]f claims of selective law enforcement are raised . . . , a district court retains the discretion to conduct a limited pretrial inquiry into the challenged law-enforcement practice on a proffer that shows 'some evidence' of discriminatory effect." *Id.* at 220-21. After enunciating the appropriate standard, we "vacate[d] the [d]istrict [c]ourt's discovery orders and remand[ed] for a renewed decision under the framework." *Id.* at 222.

The parties here agree that a remand on the issue of Smith's discovery request would be appropriate in light of our decision in *Washington*. We will accordingly order a limited remand consistent with *Washington*, and—despite Smith's suggestion otherwise— "commit the inquiry to the District Court's considerable discretion." *Id.*

---

[3]    On November 13, 2017, the Government filed correspondence in *Washington* stating that it would not be seeking further review of the decision. On November 27, 2017, this Court issued an order in *Washington* denying the appellant's petition for en banc and panel rehearing.

In light of the limited remand, we do not reach the merits of Smith's remaining issues on appeal. This Court recognized in *Washington* that a post-trial remedy for a successful selective enforcement challenge is striking the indictment in whole or in part. *Id.* at 223. If Smith succeeds on his discovery challenge on remand, such that the underlying indictment is dismissed, the remaining issues on appeal would become moot and our disposition of them would approach an advisory opinion. *See United States v. Thomas*, 713 F.3d 165, 168 (3d Cir. 2012) ("A judicial decision rendered in the absence of a case or controversy is advisory, and federal courts lack power to render advisory opinions."). Accordingly, we will hold the remaining issues on appeal C.A.V.,[4] to be considered if the District Court determines on remand that either Smith is not entitled to discovery under the standard articulated by *Washington* or his selective enforcement challenge is otherwise unavailing.

We acknowledge that *Washington* did address and resolve the appellant's ineffective assistance of counsel claim and mandatory minimum due process challenge to his sentence in that case, in addition to issuing a limited remand as to Washington's selective enforcement claim. *See* 869 F.3d at 202-13. *Washington*, however, did not

---

[4] "C.A.V. is the abbreviation for the Latin legal phrase, *curia advisari vult*, meaning 'the court will be advised, will consider, will deliberate.' It is the term we use when we hold an appeal in abeyance pending the outcome of another proceeding." *Mateo v. Attorney Gen. U.S.*, 870 F.3d 228, 231 n.4 (3d Cir. 2017) (quoting *In re Mystic Tank Lines Corp.*, 544 F.3d 524, 526 n.1 (3d Cir. 2008)); *see, e.g., id.* at 526 (noting that the case had been held C.A.V. pending the resolution of a "petition for review in another deportation case" before the Court and the grant of a petition for certiorari in a separate relevant case).

10

expressly state that when evaluating a challenge to the standard employed regarding selective enforcement along with other substantive issues, the Court must resolve all issues in one opinion. In the interest of judicial economy and with an eye towards avoiding the issuance of an advisory opinion, we opt to postpone a further ruling on the merits until the District Court reevaluates Smith's discovery motion.

## IV. Conclusion

For the foregoing reasons, we will vacate the District Court's discovery order, remand for further proceedings, and hold the remainder of the appeal C.A.V. pending the outcome of those proceedings.